WILLIAM O'MALEY *vs.* SOUTH BOSTON GAS LIGHT
COMPANY.

Suffolk.   December 2, 1892. — January 17, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Negligence — Defective
Machinery — Assumption of Risk.*

It is a defence to an action under the St. of 1887, c. 270, for personal injuries occasioned
to the plaintiff, while in the defendant's employ, by reason of the defective con-
dition of the " ways, works, or machinery " of the defendant, that the plaintiff,
when he entered upon the employment, knew and fully appreciated the danger
to which he was to be exposed.

TORT, under the St. of 1887, c. 270, for personal injuries
occasioned to the plaintiff while in the defendant's employ.
Trial in the Superior Court, before *Sherman*, J., who, at the
defendant's request, directed the jury to return a verdict for the
defendant; and, at the plaintiff's request, reported the case for
the determination of this court.   If the ruling was correct, the
verdict was to stand; otherwise, the verdict was to be set aside
and a new trial granted.   The material facts appear in the
opinion.

*J. P. Barlow*, for the plaintiff.

*C. P. Greenough & J. P. Parmenter*, for the defendant.

KNOWLTON, J.   The plaintiff, while wheeling coal in a barrow
on a run in one of the defendant's coal sheds, fell off and was
injured.   The action is brought under the employers' liability
act (St. 1887, c. 270), for an alleged defect in the ways, works,
or machinery of the defendant, it being contended that the
defendant was negligent in not providing guards on the runs
to prevent such an accident.   The plaintiff testified, and it was
undisputed, that he had assisted in the same work at various
times during the last fifteen years, and that the coal shed and
runs had all the time remained unaltered in construction.

If the action were at common law, it would be too plain for
argument that the plaintiff took the risk of such accidents as
that which happened, and that the defendant is not liable.

*Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. *Mahoney* v. *Dore*, 155 Mass. 513. But it is contended that, under the statute referred to, the rule is different.

It is well settled that, in the absence of a special contract affecting the rights and liabilities of the parties, the statute has taken away from defendants, in the cases mentioned in it, the defence that the injury was caused by the act of a fellow servant of the plaintiff. It is also established by an adjudication of this court, and by decisions under a similar statute in England, that it has not taken away the defence that the plaintiff, knowing and appreciating the danger, voluntarily assumed the risk of it. *Mellor* v. *Merchants' Manuf. Co.* 150 Mass. 362. *Thomas* v. *Quartermaine*, 18 Q. B. D. 685. *Yarmouth* v. *France*, 19 Q. B. D. 647. *Thrussell* v. *Handyside*, 20 Q. B. D. 359. *Walsh* v. *Whiteley*, 21 Q. B. D. 371. *Smith* v. *Baker*, [1891] A. C. 325. Precisely how and when this defence can be availed of in cases where the ways, works, and machinery of the defendant are found to be defective, has never been decided in this Commonwealth. The nature of the defence was somewhat considered in *Fitzgerald* v. *Connecticut River Paper Co.* and *Mahoney* v. *Dore*, *ubi supra*, which were cases at common law, and it was held that, to be precluded from recovering on this ground, the plaintiff must not only know and appreciate the risk, but must assume it voluntarily. The doctrine of assumption of the risk of his employment by an employee has usually been considered from the point of view of a contract, express or implied; but as applied to actions of tort for negligence against an employer, it leads up to the broader principle expressed by the maxim, *Volenti non fit injuria.* One who, knowing and appreciating a danger, voluntarily assumes the risk of it, has no just cause of complaint against another who is primarily responsible for the existence of the danger. As between the two, his voluntary assumption of the risk absolves the other from any particular duty to him in that respect, and leaves each to take such chances as exist in the situation, without a right to claim anything from the other. In such a case, there is no actionable negligence on the part of him who is primarily responsible for the danger. If there is a failure to do his duty according to a high standard of ethics, there is, as between the parties, no neglect of legal duty.

That part of the statute under which this action is brought gives a remedy only for defects " which arose from, or had not been discovered or remedied owing to, the negligence of the employer, or of any person in the service of the employer, and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition." A proceeding under it necessarily involves the question whether there was negligence in not having the ways, works, and machinery in better condition. The negligence referred to is the neglect of a duty owed to the plaintiff, and not of a general duty, which, by reason of the relations of the parties, does not extend to him.

The statute does not attempt to take away the right of the parties to make such contracts as they choose, which will establish their respective rights and duties. In the numerous enterprises of every kind which involve the employment of labor, there is necessarily almost every degree of danger to employees. Improvements are constantly being made in the methods of doing business, and in the ways, works, and machinery used. The adoption of the latest and best machinery would often involve the displacement and loss of that which has been but little used, and which was the best obtainable when bought. It would be unreasonable to attempt to require every one hiring laborers to have the safest place and the best machinery possible for carrying on his business. It would be an unwarranted construction of the statute, which would tend to defeat its object, to hold that laborers are no longer permitted to contract to take the risk of working where there are peculiar dangers from the arrangement of the place and from the kind or quality of the machinery used. Nothing but the plainest expression of intention on the part of the Legislature would warrant giving the statute such an interpretation. We have no doubt that one may expressly contract to take the obvious risks of danger from inferior or defective machinery as well since the enactment of this statute as before. If he does so, his employer owes him no duty in respect to such risks, and if he is hurt from a cause included in the contract, the defect is not within the terms of the statute, the maxim, *Volenti non fit injuria,* applies, and he cannot recover. Whether he knows and appreciates the particulars of the danger is imma-

terial, if he knows there is danger, and expressly contracts in regard to it without caring to know the particulars, and in such a case he must be deemed to encounter it willingly. One who makes a contract to enter into a new relation undertakes voluntarily what he agrees to do, and his agreement, inasmuch as the other party acts upon it, is to be construed in reference to the obvious facts and circumstances to which it pertains. When he agrees to assume the risk from a certain kind of machinery, his action is equally voluntary in reference to every such risk, whether he fully appreciates the danger or chooses to take the risk of it without knowing its extent; and he absolves his employer from what otherwise would be a duty to make the machinery safer.

The same reason applies equally where the employee, without any express stipulation in regard to risks, enters a service which, by reason of the obvious condition of the ways, works, and machinery, involves peculiar dangers. Such a contract is implied as ought to be implied from the situation and dealings of the parties, and it has the same effect as if expressly made. The work to be done may have special reference to defects in the works or machinery. One may be hired to make repairs which expose him to peculiar dangers by reason of the condition of the defective parts. Surely it cannot be said that a workman does not impliedly contract to take the obvious risks from the condition of the machinery, when he agrees to do work in the repair of it. Nor can it any more be said that he does not impliedly make a similar contract, when he agrees to work in a business involving obvious dangers by reason of the inferior machinery with which he knows it is to be carried on. He is free to accept the service or not, as he chooses, and, if harm comes to him by reason of his acceptance of it, he suffers voluntarily.

It is manifest that these considerations in reference to a contract, express or implied, do not apply to dangers resulting from conditions which arise or defects which come into existence after the making of the contract, which cannot be deemed to have been contemplated when the contract was made.

The precise question involved in this case does not seem to have been settled in England, although there has been much

discussion and a variety of opinion in regard to questions closely allied to it.   It is held by all the judges there that the maxim, *Volenti non fit injuria,* applies as well to actions under the statute as to those at common law; but none of the cases which have come to our attention have determined the effect of a contract to work in a place obviously dangerous by reason of inferior machinery or appointments when the contract was made.  Sometimes it seems to have been assumed that the defence of an implied contract to assume the ordinary risks of a business is taken away by the statute, without recognizing any distinction between an implied contract founded on the known condition of the ways, works, and machinery in reference to which the contract is made, and a contract in reference to dangers from the negligence of fellow servants, or the subsequent neglect of the master.   In *Walsh* v. *Whiteley,* 21 Q. B. D. 371, the decision of the Lords Justices Lindley and Lopes, a majority of the court of appeals, tends to support the view we have taken, although the judgment is on different grounds.   So also does the judgment in *Thomas* v. *Quartermaine,* 18 Q. B. D. 685, which has been often considered and explained, but never overruled. In *Smith* v. *Baker,* [1891] A. C. 325, elaborate opinions were given in the House of Lords, showing considerable difference of view on some of the questions we have been considering; but the effect of a contract to work under exposure to peculiar dangers from machinery, obvious when the contract was made, was not much considered.

In the present case, the plaintiff when he made his contract knew and fully appreciated the dangers to which he was about to expose himself; for they were obvious, and he had been accustomed to work on the runs, from time to time, for fifteen years, during which period they had remained unchanged.   We are of opinion that he impliedly contracted to work on the runs as they were, and that, if they can be considered defective, the defect is not within the description in the St. of 1887, c. 270, § 1, inasmuch as the defendant owed him no duty in regard to it, and he cannot say that its continued existence was owing to the negligence of his employer.

*Judgment on the verdict.*