CARTAGENA, PLAINTIFF AND RESPONDENT, v. MAYAGÜEZ LIGHT &
ICE COMPANY, DEFENDANT AND APPELLANT.

## APPEAL from the District Court of Mayagüez in an Action for Damages.

### No. 1069.—Decided July 18, 1914.

EMPLOYERS' LIABILITY—DEFECT IN MACHINERY—CAUSE OF ACCIDENT.—When, as
in the case at bar, it is proved that the plaintiff worked as machinist in the
factory of the defendant for several years and that one of his duties was to
repair the defects in the clutch of the machine and that the accident which
caused the injury to the plaintiff did not occur while the machine was in
operation, thus causing the jumping out or breaking of the clutch, but
occurred while the plaintiff was repairing the defects of same, it cannot be
concluded that the accident was the necessary and exclusive consequence of
any defect in defendant's machinery, within the meaning of the act in force
relating to the liability of employers.

ID.—ASSUMPTION OF RISK—DEFECT IN MACHINERY.—When, as in the case at
bar, the defect in the clutch of the defendant's machinery existed from the
time of its installation in the year 1895, since which time the plaintiff had
been in charge of the same, knew of the said defect and voluntarily assumed
the obligation to repair the same, and there is nothing to show that he
specifically called the attention of the defendant to the fact that the adjust-
ment of the clutch in the manner which he had followed for many years
placed his life in danger or exposed him to bodily injury and that the
defendant promised to repair the defect permanently or that the accident
occurred during a period which would reasonably warrant the deduction that
the plaintiff had continued to work under the impression that the defendant
would repair the defect, it must be concluded that he voluntarily assumed
the risk of his employment and must take the consequence of his own acts.

The facts are stated in the opinion.

*Messrs. N. B. K. Pettingill, Benjamin J. Horton* and *Fer-
nando Vázquez* for the respondent.

*Mr. Leopoldo Feliú* for the appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for damages. Both parties having filed
their pleadings and the case having been tried, the District
Court of Mayagüez rendered judgment on May 9, 1913, ad-
judging that the defendant company pay to its employee, the
plaintiff, the sum of $1,000 as an indemnity for the damages

which he suffered by the accident described in the complaint, together with costs, disbursements, and an attorney's fee.

After considering the evidence introduced the trial court made the following findings of fact:

"That the defendant, the Mayagüez Light and Ice Company, is a company incorporated under the laws of Porto Rico for the purpose, among other things, of furnishing light and power in the city of Mayagüez where it maintains an electric plant for the public lighting service. That the plaintiff, Cándido Cartagena, had been working in the electric plant of the defendant company in this city of Mayagüez since its foundation, the said plant having been in operation since the year 1895.

"It was proven also that the electric plant referred to in the complaint belongs to Ramón Valdés and that on March 8, 1911, the plaintiff, Cándido Cartagena, who had been employed in the said plant since its foundation, was working as a machinist in the electric plant situated on Candelaria Street, Mayagüez, and belonging to the defendant; that on the morning of said March 8, 1911, while he was adjusting the clutch of engine No. 2 a piece of iron flew off and struck him a severe blow in the left eye, which caused him great physical pain, compelling him to keep to his bed, and prevented him from doing any work whatever for four months after the accident; that he has become totally blind of the said left eye and is still partly incapacitated from working at the trade by which he earned his living, and that, in addition, he has suffered severe physical pain and spent large sums of money in his efforts to be cured.

"It was proved also that the said plaintiff, Cándido Cartagena, as such machinist, earned, while in the employ of the defendant and up to the time of the accident, $60 monthly.

"It was proven by the testimony of the witnesses for the plaintiff and for the defendant that the clutch of said engine No. 2 had been defective since its installation, for, according to defendant's witness Pastor Carrero, said clutch had been out of order ever since it was placed on said engine and always had to be adjusted with a hammer.

"As to this point it has been proved, as before stated, that the clutch was always out of order even before the engine belonged to the present owner, Ramón Valdés, and that notwithstanding the fact that he was told of the said defect after the Mayagüez Light and Ice Company had taken charge of the machinery or electric plant, as has been proven, the said defect has never been properly and com-

pletely repaired by the defendant, by Ramón Valdés, who owns the plant, or by any person by order of the defendant.

"It was proven satisfactorily that Wenceslao Sifre was the superintendent and manager of the said plant at the time the accident occurred, having been placed in that position and charged with its obligations and duties by the owner, Ramón Valdés; that said superintendent Sifre inspected the plant twice a day and once at night to see how it operated; that every morning the machinist on duty submitted to the superintendent or manager, Wenceslao Sifre, a report of all the adjustments or repairs requiring immediate attention in the said electric plant; that on various and repeated occasions, as was proved sufficiently, the clutch became loose and it was necessary to adjust it with a hammer. This was proved both by the witnesses for the plaintiff and for the defendant, including the engineer who is now in charge of the said plant.

"Moreover, witness Pastor Carrero, who was called by the defendant and is the present machinist of the electric plant, testified to the fact that since the electric plant has belonged to the defendant, the Mayagüez Light and Ice Company, the clutch has been adjusted about eight or ten times.

"It has also been proven that one of the duties of the machinist, which position was held by Cándido Cartagena in the said plant, was to adjust these defects of the clutch."

After the foregoing findings of fact the trial court reached the following conclusions on which it based its said judgment:

"1. That the plaintiff has suffered serious injuries as a consequence of the accident which gave rise to this action.

"2. That the plaintiff was discharging his duty with proper care and diligence when he received the said injuries.

"3. That the injuries to the plaintiff were caused by a defect in engine No. 2 used in the electric plant, which defect was known of and was not remedied owing to the negligence of the employer or of his superintendent, Wenceslao Sifre, whose sole and principal duty was shown to be the management of the electric plant.

"4. That the injury was due solely and exclusively to the negligence of the defendant, the Mayagüez Light and Ice Company."

The attorney for the defendant-appellant assigned and argued eleven errors in his brief. We will disregard the first

ten and, in view of the attendant circumstances, consider only the last, which covers the whole case, and which reads as follows: "The judgment rendered by the court is not in conformity with the evidence nor supported thereby, nor is it in accordance with the law."

We have considered carefully the evidence introduced and in our opinion it has been correctly weighed by the trial court. The question to be decided is whether or not the findings of fact sustain the conclusions of the district court and support the judgment appealed from.

First, we will examine the case in the light of the act in relation to the liability of employers for injuries sustained by their employees while in their service, approved March 1, 1901. Section 1 of the said act (section 322 of the Revised Statutes) provides that the right to maintain an action for damages against the employer shall exist, among other cases, when personal injury is caused to an employee who is himself in the exercise of due care and diligence in the line of his duties by reason of any defect in the machinery connected with, or used in, the business of the employer, which defect originated or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and entrusted by him with the duty of seeing that the said machinery was in good condition.

According to the findings of fact of the trial court, the relation of employer and employee existed between the plaintiff and defendant in the present case, and it was proved also that the employee received a personal injury while engaged in the service of the employer. Up to this point all the statutory requirements for maintaining an action for damages have been shown, but was the accident due to any defect in the machinery of the employer?

According to the evidence as weighed by the trial court, the clutch of the defendant's machine had been out of order since its installation in 1895 and it has always been found necessary to hammer it into place. Also, according to the

evidence, the plaintiff, Cándido Cartagena, worked on the defendant's engine since 1895 and one of his duties as machinist was precisely to repair the defects in the clutch. Finally, according to the evidence as weighed by the trial court, the accident which caused the injury to the plaintiff did not occur while the engine was in operation by reason of which, for example, the clutch flew off or broke, but it occurred while the plaintiff was adjusting the defective clutch. This being the case, it cannot be concluded that the accident was a necessary and sole consequence of the defect in the machinery of the defendant, even supposing that the defect in the clutch in question, in view of the attendant circumstances, may be considered as one of the defects referred to in the act relative to the liability of employers.

If we consider the case in the light of the general provisions of law and apply the doctrine of the assumption of risk, it results also that the case must be decided against the plaintiff. As we have said, the defect in the clutch of the defendant's engine existed since its installation in the year 1895, and from that same date the plaintiff had been in charge of the engine now belonging to the defendant. Therefore, the plaintiff had known of the defect for many years and as such machinist he voluntarily assumed the obligation of repairing the same. There is nothing whatever to show that the plaintiff specially called the attention of the defendant to the fact that the adjusting of the clutch in the manner in which it had been done for many years endangered his life or exposed him to the dangers of personal injury, that the defendant thereupon promised to remedy the defect and that the accident occurred during a period of time which would permit of the reasonable inference that the plaintiff had continued to work in the belief that the defendant would repair the defect. *Are et al.* v. *Borinquen Sugar Company,* 17 P. R. R., 886; *Hough* v. *Railway Co.,* 100 U. S., 225. On the contrary, it appears that if the plaintiff considered his work to be dangerous, nevertheless he voluntarily undertook it and

must, therefore, take the consequences arising from his own acts. See the decisions of this court in the cases of *Claudio v. Cortínez,* 9 P. R. R., 97, and *Pérez v. Yabucoa Sugar Company,* 15 P. R. R., 200.

The Supreme Court of Massachusetts, in the case of *O'Malley* v. *South Boston Gas Light Company,* 158 Mass., 135, 136, expressed itself as follows:

"The doctrine of assumption of the risk of his employment by an employee has usually been considered from the point of view of a contract, express or implied; but as applied to actions of tort for negligence against an employer, it leads up to the broader principle expressed by the maxim, *Volenti non fit injuria.* One who, knowing and appreciating a danger, voluntarily assumes the risk of it, has no just cause of complaint against another who is primarily responsible for the existence of the danger. As between the two, his voluntary assumption of the risk absolves the other from any particular duty to him in that respect, and leaves each to take such chances as exist in the situation, without a right to claim anything from the other. In such a case, there is no actionable negligence on the part of him who is primarily responsible for the danger. If there is a failure to do his duty according to a high standard of ethics, there is, as between the parties, no neglect of legal duty."

Therefore, in view of the facts and applying the law as construed by the courts, we are constrained to reverse the judgment appealed from. The present case might serve as a basis for those who assert the necessity of a radical reform of the laws regulating indemnities for accidents to employees, but until such reform is effected the courts are helpless, for their province consists in deciding cases according to the laws in force.

*Reversed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.