STANDARD KNITTING MILLS *v.* JESSIE HICKMAN.*

(*Knoxville.*   September Term, 1915.)

1. **MASTER AND SERVANT.** Liability for injuries. Failure to warrant.

An employee, working on a mangle, as she stepped down from the platform on which she worked to go back of the machine, slipped on a place where a scrubwoman had just put soapy water. Though she had worked on the mangle only a few hours, it, and the floor about it, were in view of her accustomed working place, and she knew that the scrubwoman mopped the floor about twice a week, and knew, also the route taken by the scrubwoman as she passed the mangle. Her attention had been directed to the machine, which was so hot that it would burn one's hand, but on leaving the machine she had nothing to do but keep away from the machine. *Held,* that the danger of slipping was so simple and obvious that it was not incumbent on the employer to warn her of the danger, and it was immaterial that she had been absorbed in her work, as she was relieved of this tension when she stepped down and away. (*Post, pp.* 44-49.)

Cases cited and approved:  Brewer v. Tennessee Coal, etc., Co., 97 Tenn., 615; Cudahy Packing Co. v. Marcan, 106 Fed., 645; Omaha Packing Co. v. Sanduski, 155 Fed., 897; Kline v. Abraham, 178 N. Y., 377; Kleinest v. Kunhardt, 160 Mass., 230; Murphy v. American Rubber Co., 159 Mass., 266.

Cases cited and distinguished:  Ferguson v. Phoenix Cotton Mills, 106 Tenn., 236; Thompson v. Norman Paper Co., 169 Mass., 416; Goudie v. Foster, 202 Mass., 226; Hattaway v. Atlanta Steel, etc., Co., 155 Ind., 507.

2. **MASTER AND SERVANT.** Liability for injuries. Unsafe "place" to work.

The word "place," within the rule requiring an employer to furnish a safe place of work, means the premises, or some

---

*As to servant's assumption of risk from changing conditions of working place during progress of work including obvious risks see notes in 19 L. R. A. (N. S.), 340, 28 L. R. A. (N. S.), 1267.

Standard Knitting Mills v. Hickman.

part of the premises, where the work is done, and does not comprehend mere negligent acts of fellow servants rendering the place dangerous for the time being, as by way of some transient peril. (*Post, pp.* 49, 50.)

Cases cited and approved: Southern Indiana R. Co. v. Harrell, 161 Ind., 689; Herman v. Port Blakely Mill Co. (D. C.), 71 Fed., 853; Haskell, etc., Co. v. Przezdziankowski, 170 Ind., 1.

FROM KNOX

Appeal from the Circuit Court of Knox County.— Von A. Huffaker, Judge.

Maynard & Lee and Jourolmon & Welcher, for appellant.

Harris & Beeler, for appellee.

Mr. Justice Williams delivered the opinion of the Court.

Jessie Hickman, a young woman aged eighteen years, was engaged in running a mangle or ironing machine in the mill of plaintiff in error, at the time she was injured. Her duties were to put unfinished underwear between heated rollers in the machine, and after a dozen garments were so placed, her duty was to go behind the machine, collect the ironed garments that had passed through, and place them where they were to be further worked on by other employees.

While engaged in feeding the garments in the machine, she stood fronting the machine on a platform,

which was about four or five inches above the floor level, from which she stepped to the floor in going to the rear of the machine.

The usual place of work of the employee had been at a table, folding the finished garments for boxing, but in the same room where the mangle stood. She had been changed to the mangle at the commencement of work at seven o'clock in the morning, before the injury at twelve forty-five in the afternoon. She had had no previous experience at the mangle, save a few minutes on two previous occasions. The mangle and the floor about it were, however, in view of her accustomed working place.

About twice a week a scrubwoman customarily mopped the floor of the room to remove oil and dirt; that she did so was known to the plaintiff employee, who knew also the route taken by the scrubwoman as she passed the mangle.

The plaintiff, after putting through the machine a dozen garments just after the noon hour, stepped down from the platform to go back of the machine, when she slipped on the floor at a place where the scrubwoman had just put soapy water, and received the injuries for which this suit was brought.

She testifies that no one had warned her, and that she did not look to see, nor did she know, that the water was standing where she stepped; that while the floor was being mopped by the scrubwoman plaintiff had her attention directed to the machine, which was so hot that it would burn one's hand if touched

against its metal rollers. When she got off of the platform she "had nothing to do but to keep away from the machine, and was not bothered for lack of light."

The rear of the machine could have been reached by going from plaintiff's standing place around the other end where the floor is not shown to have been wet at the time, though the usual route was the one taken by plaintiff. The scrubwoman was yet at work near the machine when plaintiff fell and while not right at the spot, she was at plaintiff's side at that end of the mangle; she had not gone away and left the soapy water on the floor.

The theory of plaintiff for a recovery is that the place of work was unexpectedly made dangerous, and that she, without experience at that place of work, was given no warning of the dangerous situation.

The court of civil appeals sustained this theory. We are asked to review its judgment and to rule that the facts made a case for a directed verdict of nonliability on the part of the employer.

In our opinion the trial judge and that court should have sustained the motion for such peremptory instructions, on the ground that the danger was so simple and obvious as that the employee could, at a glance, observe and comprehend for herself, and so obvious as that it was not incumbent on the employer to give her warning. Plaintiff knew that the floors were cleaned by mopping them with soapy water at intervals, and also the direction the colored woman took, in doing so, as the latter passed the machine in question.

In the case of *Ferguson* v. *Phoenix Cotton Mills*, 106 Tenn., 236, 61 S. W., 53, the plaintiff employee complained of an injury caused by a hole in the floor at his working place, where he had been employed only five days. The court held that any such danger was obvious; and, denying the right to recover, said:

"It was not incumbent on the defendant to prove that the plaintiff had knowledge of a defect which was plain and obvious. . . . It does not require experience to see a hole in the floor, and as these were necessary for the drainage of the floor, it was one of the risks . . . assumed, and was so simple and obvious that experience was not an element to be considered in determining the question of liability, nor was it such as was incumbent on the defendant to instruct about."

See, also, *Brewer* v. *Tennessee Coal, etc., Co.*, 97 Tenn., 615, 37 S. W., 549; 3 Labatt, Master & Servant (2 Ed.), secs. 1000, 1144, citing *Ferguson* v. *Phoenix Cotton Mills,* supra; *Cudahy Packing Co.* v. *Marcan,* 106 Fed., 645, 45 C. C. A., 515, 54 L. R. A., 258; *Omaha Packing Co.* v. *Sanduski,* 155 Fed., 897, 84 C. C. A., 89, 19 L. R. A. (N. S.), 355; *Kline* v. *Abraham,* 178 N. Y., 377, 70 N. E., 923.

In *Thompson* v. *Norman Paper Co.*, 169 Mass., 416, 48 N. E., 757, it appeared that a beam on which the plaintiff employee slipped and fell was wet, and had been made more slippery by the placing thereon of soda ash, which was used for cleaning purposes. The common use of soda ash in the mill was known to the employee, but according to his testimony he did not

know it had been used in the particular place. The negligence averred was in the failure to warn the plaintiff that the soda ash had been so used. The court held that the case should have been taken from the jury, saying:

"Plainly it would have been unreasonable to require his employers to have some one at hand to notify him that the beam was wet, and that soda ash had been used. . . . The superintendent was warranted in assuming that the plaintiff would use his eyes, and in supposing that he would know that soda ash might have been employed."

See, also, *Kleinest* v. *Kunhardt,* 160 Mass., 230, 35 N. E., 458.

In accord with the above is the case of *Goudie* v. *Foster,* 202 Mass., 226, 88 N. E., 663, applying the rule to a laundry floor made slippery by an accumulation of starch saturated with water. The plaintiff was held to have assumed the risk of a slippery floor.

In *Hattaway* v. *Atlanta Steel, etc., Co.,* 155 Ind., 507, 58 N. E., 718, a floor was made slippery by oil being spilled thereon, over which sawdust was thrown to absorb the oil, and the plaintiff knew of the practice. Plaintiff was injured by slipping thereon while using the floor in the prosecution of his work; but the court held the employer not liable, on the ground that the condition was fully exposed to view and the risk an obvious one.

The plaintiff's attitude for a recovery is not changed by reason of any absorption in or a diverting of her

attention to any dangers about her. The danger was that of having a hand burned by or caught between the rollers of the mangle, and that absorbed the plaintiff only while she stood placing the garments between the rollers. She was relieved of tension when she stepped down and away. As plaintiff herself phrased it: "I had nothing to do but to keep away from the machine." She was just leaving the place that was ordinarily dangerous, and she was not injured by the rolls of the mangle.

Moreover, it would seem that if such were not the normal (or, to reverse the phrase, not the fairly fixed abnormal) condition of the floor, but that the slipperiness was caused by the neglect of the scrubwoman, this was the fault of a fellow servant, and the plaintiff cannot recover. *Murphy* v. *American Rubber Co.,* 159 Mass., 266, 34 N. E., 268; *Omaha Packing Co.* v. *Sanduski,* supra.

The defect was no more a structural one than would have been a negligent leaving on the floor of her mop by the scrubwoman. The theory of plaintiff is based upon a misconception or confusion of terms. The word "place," within the meaning of the rule that requires an employer to furnish a safe place of work, means the premises, or some part of the premises, where the work is done, and does not comprehend mere negligent acts of the fellow servants that render the place dangerous for the time being, as, for example, by way of some transient peril. *Southern Indiana R. Co.* v. *Harrell,* 161 Ind., 689, 68 N. E., 262, 63 L. R. A., 460; *Her-*

133 Tenn. 4

*man* v. *Port Blakely Mill Co.* (D. C.), 71 Fed., 853; *Haskell, etc., Co.* v. *Przezdziankowski*, 170 Ind., 1, 83 N. E., 626, 14 L. R. A. (N. S.), 972, 127 Am. St. Rep., 352; 3 Words and Phrases, Second Series, 1038.

For failure to sustain the motion for peremptory instructions interposed by the defendant, the judgment of the court of civil appeals is reversed. Judgment here sustaining that motion.